NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAUL SANJEEV MD FACS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NORTHERN NEW JERSEY TEAMSTERS BENEFIT PLAN, et al., <br><br> Defendants. | Civil Action No.: 13-cv-1078 <br><br><br> OPINION |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court by way of two motions: (1) Defendant Northern New Jersey Teamsters Benefit Plan's ("Defendant") motion for summary judgment as to counts one through four of Plaintiff Kaul Sanjeev MD FACS, LLC's ("Plaintiff") complaint, (ECF No. 20); and (2) Plaintiff's motion for summary judgment as to counts two through four[1] of Plaintiff's complaint. (ECF No. 19). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. After reviewing the submissions made in support of and in opposition to the instant motions, and for the reasons set forth below,[2] Defendant's motion is granted and Plaintiff's motion is denied.

## II.    BACKGROUND

Plaintiff "is a healthcare provider located in Bergen County, New Jersey."[3] (ECF No. 19-3 ¶ 1). In or about July 2010 through November 2010, "Plaintiff provided emergency surgical and

---

[1] In Plaintiff's motion for summary judgment, Plaintiff "agrees to voluntarily dismiss the state law breach of contract claim[.]" (ECF No. 19-2 at 5). Accordingly, count one of Plaintiff's complaint is dismissed, and the Court need not determine whether summary judgment is appropriate on this count. Moreover, counts five and six of Plaintiff's complaint are brought against Defendant Richard Romero, (ECF No. 1 at 14-16), who does not appear to have been served in this matter.
[2] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).
[3] Unless otherwise indicated, the following factual background is not disputed by the parties.

related medical services to its patient, Richard R. ("R.R.")" on thirty dates of service (the "Dates of Service"). (*Id.* ¶ 2). "On all dates of service, R.R. was a beneficiary or participant in a self-insured employee welfare benefit plan" (the "NNJ Plan"). (*Id.* ¶ 3; ECF No. 20-5 ¶¶ 1, 6).

"The NNJ Plan is maintained pursuant to an Amended and Restated Agreement and Declaration of Trust, as amended (the "Trust Agreement")." (ECF No. 20-5 ¶ 1). Moreover, "[t]he NNJ Plan is jointly administered by a Board of Trustees made up of representatives of the Unions and contributing employers. The Board of Trustees is the 'plan sponsor' and 'plan administrator' of the NNJ Plan as defined by" the Employee Retirement Income Security Act ("ERISA"). (*Id.* ¶ 2). "The NNJ Plan provides hospitalization, medical[,] and certain other benefits to individuals" under "several different benefit plan levels. The specific benefit plan under which a participant is covered is based upon the contributions negotiated in the participant's employer's collective bargaining agreement." (*Id.* ¶¶ 3-4).

"Under the Trust Agreement, the [Board of] Trustees of the NNJ Plan are responsible, *inter alia*, for determining the form, nature[,] and amount of benefits to be provided by the NNJ Plan and generally overseeing the operations of the NNJ Plan." (*Id.* ¶ 8). Specifically, the Trust Agreement: (i) vests the Board of Trustees with the power to interpret, apply, and construe the terms of the Trust Agreement; and (ii) renders the Board of Trustees' construction, interpretation, and application of the terms of the Trust Agreement binding on the unions, employers, and employees. (*Id.*).

"At all times relevant to this action, [R.R.] was a participant in the NNJ Plan covered under the NNJ Plan's 'Plan D' level of benefits." (*Id.* ¶ 7). According to Defendant:

> The Plan D level of benefits was specifically designated as a lower-cost option for those employers paying a lower rate of contributions under the collective bargaining agreement. In order to accommodate the lower contribution rate, Plan

2

D offers a more limited level benefit, with certain restrictions, such as limitations on the providers for whom the NNJ Plan would provide benefits.

(ECF No. 21 at 8). The Plan D Summary Plan Description ("SPD"), which is provided to all NNJ Plan participants, (i) provides the Board of Trustees with further authority to interpret and construe the terms of the benefit plans and the Trust Agreement; and (ii) notes that "[a]ny determination made by the Board of Trustees with respect to a Participant's rights or benefits will be entitled to the maximum deference permitted by law and will be final and binding upon all Participants and beneficiaries." (ECF No. 20-5 ¶¶ 5, 9). Moreover, "[t]he 'ERISA and Appeal Rights' section of the Plan D SPD . . . further details the [Board of] Trustees' discretion." (*Id.* ¶ 10). The Plan D SPD states in relevant part that:

> The [Board of] Trustees shall, subject to the requirements of law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan. Without limiting the generality of the foregoing, the [Board of] Trustees shall have the sole and absolute discretionary authority to:
>
> - take all actions and make all decisions with respect to the eligibility for and the amount of benefits payable under the Plan;
>
> - formulate, interpret[,] and apply rules, regulations[,] and policies necessary to administer the Plan in accordance with its terms;
>
> - decide questions, including legal and factual questions, relating to the payment of benefits under the Plan;
>
> - resolve and/or clarify any ambiguities, inconsistencies[,] and omissions arising under the Plan or other Plan documents; and
>
> - to process and approve or deny benefit claims and rule on any benefit exclusions.
>
> The decision upon review of the Board of Trustees or its designated committee will be final and binding on all parties and shall be given deference in all courts of law to the greatest extent allowed by applicable law.

(ECF No. 20-3 at 99-100).

3

"The benefits to which a participant or eligible dependent is entitled are expressly limited to those set forth in the NNJ Plan documents for the applicable plan of benefits." (ECF No. 20-5 ¶ 11; *see also id.* ¶ 5). Notably, the Plan D SPD states, "NETWORK ONLY COVERAGE" and "THIS PLAN COVERS SERVICES FOR NETWORK PROVIDERS. THIS MEANS THAT THERE IS NO COVERAGE FOR DOCTORS, LABORATORIES, OR GENERALLY, OTHER PROVIDERS THAT ARE NOT IN THE NETWORK." (ECF No. 20-3 at v).

"At all times relevant to this action, the NNJ Plan used Horizon Blue Cross Blue Shield of New Jersey as its Preferred Provider Organization/provider network for facilities as well as medical providers." (ECF No. 20-5 ¶ 15; *see also id.* ¶ 6). The Plan D SPD defines "Preferred Provider Organization" as "a group of selected physicians, specialists, Hospitals, and other treatment centers which have agreed to provide their services to Plan Participants and beneficiaries at a negotiated rate under the terms of an agreement." (ECF No. 20-3 at 8; *see also* ECF No. 20-5 ¶ 14). Such providers are referred to as "Network providers." (ECF No. 20-3 at 8; *see also* ECF No. 20-5 ¶ 14). Conversely, medical providers not under contract "to provide their services . . . at a negotiated rate" are considered "Non-network," "Out-of-Network," or "Non-panel providers" under the Plan D SPD. (ECF No. 20-3 at 8; *see also* ECF No. 20-5 ¶ 14). Here, the parties agree that Plaintiff was a "Non-network" provider under the Plan D SPD. (ECF Nos. 19-3 ¶ 4; 20-5 ¶ 16; 22 ¶ 16).

Nonetheless, "Plaintiff submitted bills to Horizon Blue Cross Blue Shield of New Jersey for the Dates of Service in the amount of $362,335.97." (ECF No. 19-3 ¶ 6; *see also* ECF No. 20-5 ¶ 17). "The NNJ Plan denied coverage for the claims submitted by Plaintiff . . . on grounds that the services are covered only if a Network provider is used. The NNJ Plan issued explanations of benefits for these claims explaining that the claims were denied because a Network provider was

not used." (ECF No. 20-5 ¶ 19). "Plaintiff obtained an assignment of benefits from R.R." and

"fully engaged in the administrative appeals process maintained by Defendant[.]" (ECF No. 19-3

¶¶ 5, 7; *see also* ECF No. 20-5 ¶¶ 17, 21). With respect to the appeals process, Defendant contends

that:

> The Board of Trustees considered [Plaintiff's] appeal and determined that
> [Plaintiff] did not, at the time the services were rendered to [R.R.], participate in
> the Horizon Blue Cross Blue Shield network and was therefore a non-Network
> provider under the terms of Plan D, and that the NNJ Plan's Plan D level of benefits
> does not provide coverage for non-network medical providers under any
> circumstances, regardless of whether the services are provided due to an emergency
> situation or whether they relate to emergency care that results in an inpatient
> admission. Therefore, the [Board of] Trustees determined that the NNJ Plan
> correctly denied the claims at issue based upon the terms of the Plan D level of
> benefits excluding coverage for non-Network providers.

(ECF No. 20-5 ¶ 22; *see also* ECF No. 19-3 ¶ 8). By appealing to the Board of Trustees, Plaintiff

exhausted its administrative remedies available through the NNJ Plan. (ECF No. 20-5 ¶ 24).

Although Plaintiff admits that it is a Non-network provider, it alleges that it is entitled to

relief because the surgical services that it provided were "Hospitalization benefits" as opposed to

"Major Medical benefits" under the Plan D SPD, and therefore the Board of Trustees'

determination to deny Plaintiff coverage was arbitrary and capricious. The Plan D SPD states that:

> The benefits provided under the D plan, in general, are provided on a restricted
> basis. Major Medical benefits are provided through Network providers only.
> Hospitalization benefits are covered for both Network and non-Network facilities,
> but services through non-Network hospital facilities require 25% Coinsurance from
> the Participant.

(ECF No. 20-5 ¶ 12). According to Plaintiff, because it provided services to R.R. *in a hospital*,

such services are covered by the Plan SPD subject to a 25% coinsurance from R.R. (ECF No. 19-

2 at 6-7). Defendant, however, contends that "[t]he references to a 25% coinsurance in the SPD

relate to Hospitalization benefits for non-Network hospital facilities, not Major Medical Benefits

for non-network medical providers," (ECF No. 20-5 ¶ 13), and that "[c]overage for surgical

5

services," like those provided by Plaintiff, "are considered under the 'Major Medical' benefits of the NNJ Plan." (*Id.* ¶ 18). In other words, Defendant contends that the Board of Trustees was not arbitrary and capricious in denying Plaintiff coverage because "Plaintiff is not a hospital; rather, [it] is a medical provider – a surgeon," (ECF No. 23 at 7), regardless of whether its services were provided in a hospital. (*Id.*).

On January 17, 2013, Plaintiff initiated this lawsuit in the Superior Court of New Jersey, Bergen County. (ECF No. 1 at 6). Defendant removed the case to federal court and moved for summary judgment. (ECF No. 20). Plaintiff opposed Defendant's motion, (ECF No. 22), and filed its own motion for summary judgment. (ECF No. 19). Defendant opposed Plaintiff's motion, (ECF No. 23), and filed a reply brief in further support of its motion. (ECF No. 24). After an unsuccessful mediation, the parties' motions are now before the Court.

## III.   LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the

pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must exceed "the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.   DISCUSSION

### A.   Count Two of Plaintiff's Complaint

Count Two of Plaintiff's complaint seeks relief under Section 502(a)(1) of ERISA as assignee of R.R. for payment of benefits claimed to be due under the NNJ Plan. The parties agree that the NNJ Plan confers discretion upon the Board of Trustees to interpret the language in the NNJ Plan, and that the Court must review the Board of Trustee's decision to deny Plaintiff payment of benefits under an "abuse of discretion" or "arbitrary and capricious" standard. (ECF Nos. 19-2 at 5; 21 at 11-15; 22 at 5).

In general, "[a]n administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011)). "An administrator's interpretation is not arbitrary if it is 'reasonably consistent with

unambiguous plan language.'" *Id.* (quoting *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)). "Further, a trustee's interpretation 'should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan.'" *Elite Orthopedic & Sports Med. PA v. N. N.J. Teamsters Benefit Plan*, No. 14-6932, 2017 WL 3718379, at *4 (D.N.J. Aug. 29, 2017) (quoting *Pokol v. E.I. du Pont de Nemours & Co.*, 963 F. Supp. 1361, 1370 (D.N.J. 1997)).

In deciding whether a trustee's interpretation of a plan is reasonable, the Third Circuit considers a number of factors, including:

> (1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Moench v. Robertson*, 62 F.3d 553, 566 (3d Cir. 1995). "No single *Moench* factor is dispositive; rather, a reviewing court must examine the *Moench* factors holistically in making a determination." *Elite Orthopedic*, 2017 WL 3718379, at *5.

Here, Defendant contends that the Board of Trustees' denial of Plaintiff's claims "reflected their position that the intent of the language in the Plan D SPD was to completely exclude coverage for treatment or services rendered by non-network providers, without qualification or exception as the NNJ Plan has consistently done." (ECF No. 21 at 17). Further, Defendant asserts that this interpretation "was neither unreasonable nor irrational, and was not contrary to the language of the Plan." (*Id.* at 18). Specifically, Defendant points to the language in the Plan D SPD stating that Plan D provides "NETWORK ONLY COVERAGE" and "THIS PLAN COVERS SERVICES FOR NETWORK PROVIDERS. THIS MEANS THAT THERE IS NO COVERAGE FOR DOCTORS, LABORATORIES, OR GENERALLY, OTHER PROVIDERS THAT ARE NOT IN

THE NETWORK." (*Id.* at 16).  Defendant also references the Plan D SPD's express statement that "Major Medical benefits are provided through Network providers only." (*Id.* at 17).  Relying on both of these provisions, Defendant concludes that the Board of Trustees' interpretation "comports precisely with the Plan D specific language stating that coverage is not provided for services rendered by non-network providers." (*Id.* at 18).

Conversely, Plaintiff contends that the Board of Trustees' determination is arbitrary and capricious.  (ECF No. 22 at 5).  Plaintiff concedes that "there appears to be no out-of-network coverage for *any and all* medical providers under the Plan." (*Id.* at 6).  Nonetheless, Plaintiff contends that "there is a carved-out exception which *does* provide coverage for certain medical providers, i.e. non-network hospitals," which provides in relevant part that:

> The benefits provided under the D plan, in general, are provided on a restricted basis.  Major Medical benefits are provided through Network providers only.  Hospitalization benefits are covered for both Network and non-Network facilities, but services through non-Network hospital facilities require 25% Coinsurance from the Participant.

(*Id.*; *see also* ECF No. 19-2 at 6).  According to Plaintiff, the Board of Trustees' determination was an abuse of discretion because Plaintiff performed services through a Non-network hospital facility, which "were to be covered as Hospitalization benefits, subject to a 25% Coinsurance from the patient." (ECF No. 22 at 6; *see also* ECF No. 19-2 at 6-7).  That is, Plaintiff avers that because its services were provided *in a hospital*, it is entitled to 75% coverage.  (ECF No. 19-2 at 6).  Moreover, Plaintiff avers that "Defendant's statement that '[t]he references to a 25% coinsurance in the SPD relate to Hospitalization benefits for non-Network hospital facilities, not Major Medical Benefits for non-network medical providers' is not specifically supported by the record or the Plan itself[.]" (ECF No. 22 at 6; *see also* ECF No. 19-2 at 6-7).  As such, Plaintiff believes that it "is entitled to receive 75% of its billed charges performed at the Hospital which amounts to . . . $261,260.25[.]" (ECF No. 22 at 7; *see also* ECF No. 19-2 at 7).

9

Despite Plaintiff's contentions, the Court finds that the Board of Trustees' interpretation is supported by substantial evidence, rationally related to the NNJ Plan's purpose, and not contrary to the NNJ Plan's plain language. The Plan D SPD sufficiently indicates, in plain language, that its intent is to cover in-Network services, with limited exceptions for Out-of-Network coverage. In the very beginning of the Plan D SPD, the NNJ Plan expressly states that "THERE IS NO COVERAGE FOR DOCTORS, LABORATORIES, OR GENERALLY, OTHER PROVIDERS THAT ARE NOT IN THE NETWORK." (ECF No. 20-3 at v). Similarly, the Plan D SPD also states that "Major Medical benefits are provided through Network providers only." (*Id.* at 39). Irrespective of where Plaintiff's services were provided, Plaintiff is nonetheless a doctor, that submits its own charges for reimbursement, not a hospital, that submits separate charges for reimbursement, that provided medical services to R.R. That Plaintiff disagrees with the Board of Trustees' interpretation of what services fall under "Hospitalization benefits" and what services fall under "Major Medical benefits" is not a reason to overturn the Board of Trustees' decision. *See, e.g., Pokol*, 963 F. Supp. at 1370 ("In a case involving the interpretation of a provision of a . . . plan . . . under the arbitrary and capricious standard, the trustee's interpretation 'should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan.'") (citations omitted).

Moreover, the Board of Trustees' interpretation satisfies the *Moench* factors. With respect to the first factor, despite Plaintiff's contention that "the complete denial of benefits here resulted in $362,335.97 of unpaid medical bills," (ECF No. 22 at 7), the Board of Trustees' interpretation is consistent with the NNJ Plan's goals, which are to provide *covered* hospitalization, major medical, dental, optical, prescription and life insurance benefits to participants and their eligible dependents, while preserving Plan resources. *See Elite Orthopedic*, 2017 WL 3718379, at *6. The

second factor is met because the Board of Trustees' interpretation does not render any language in the Plan meaningless or internally inconsistent. As the Board of Trustees held, Hospitalization benefits refer to services provided by *hospital facilities*, which are separate and distinct from Major Medical benefits, which encompass *surgical services*. (ECF No. 24 at 3-4).

The Court also finds that the third factor is met because the Board of Trustees' interpretation does not conflict with the substantive or procedural requirements of ERISA, as there is no ERISA requirement mandating the coverage Plaintiff seeks. *See Davidson v. Wal-Mart Assocs. Health & Welfare Plan*, 305 F. Supp. 2d 1059, 1087 (S.D. Iowa 2004) ("ERISA does not create a substantive entitlement to [health] benefits. The level of benefits to be provided is within the control of the private parties creating the plan . . . . [and] ERISA does not prohibit exclusions in plan benefits where the exclusion has a legitimate business purpose."). With respect to the fourth factor, Plaintiff has not demonstrated that the Board of Trustees has interpreted the provisions at issue inconsistently. Conversely, Defendant has consistently held throughout this matter that surgical services are Major Medical benefits not covered for Non-network providers.

Finally, as discussed above, the Court finds that the Board of Trustees' interpretation of the Plan D SPD language is consistent with the clear language of the NNJ Plan excluding coverage services rendered by Non-network providers. Although Plaintiff may believe that the services it provided constitute Hospital benefits, the clear language of the NNJ Plan excludes Non-network providers from coverage. *See supra*. Accordingly, the Court finds that the Board of Trustees' decision was not arbitrary and capricious.[4] As such, Defendant's motion for summary judgment

---

[4] Despite Plaintiff's contention, the question at issue is not whether there remains a genuine issue of material fact as to whether Plaintiff's services constitute Hospitalization benefits, (ECF No. 22 at 5); rather, as Plaintiff acknowledges, the question at issue is whether the Board of Trustees' interpretation was arbitrary and capricious. (*Id.*). Having found that it was not, Defendant's motion for summary judgment will be granted, and Plaintiff's motion will be denied.

as to count two of Plaintiff's complaint will be granted, and Plaintiff's motion for summary judgment as to count two of Plaintiff's complaint will be denied.

### B.     Count Three of Plaintiff's Complaint

Count Three of Plaintiff's complaint seeks relief under ERISA for Defendant's alleged failure to provide Plaintiff with information that it requested from Defendant. (ECF No. 1 at 11-12). ERISA § 502(c)(1) provides that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . . .

29 U.S.C. § 1132(c)(1).

Here, Defendant avers that summary judgment must be granted in its favor because despite the allegations in Plaintiff's complaint, "Plaintiff has not and cannot produce any evidence of such a request, and the NNJ Plan has no record of receiving such a request." (ECF No. 21 at 21). Plaintiff does not address Defendant's argument in its opposition to Defendant's motion for summary judgment, and merely states in its own motion for summary judgment that it "was not afforded a complete copy of the Plan until litigation was initiated." (ECF No 19-2 at 8).

The Court finds that there is no genuine issue of material fact with respect to whether Plaintiff made a request to Defendant for information.  Through the submission of a sworn declaration, Defendant states that:

> Although Plaintiff alleged in [its] Complaint in this action that [it] requested copies of the 'Plan or Policy' for [R.R.] and 'documents supporting [the NNJ Plan's] calculation of reimbursement in this case,' as set forth in paragraphs 32 and 33 of the Complaint, the NNJ Plan has no record of receiving any such requests from [Plaintiff].

12

(ECF No. 20-1 ¶ 24).  Plaintiff, however, has failed to provide the Court, either in its opposition

to Defendant's motion for summary judgment, or in Plaintiff's own motion for summary judgment,

with any evidence that Plaintiff indeed made such a request to Defendant.   In fact, Plaintiff

admitted to paragraph 23 of Defendant's undisputed statement of material facts, which states that:

> Although Plaintiff alleged in [its] Complaint in this action that [it] requested copies
> of the "Plan or Policy" for [R.R.] and "documents supporting [the NNJ Plan's]
> calculation of reimbursement in this case," as set forth in paragraphs 32 and 33 of
> the Complaint, the NNJ Plan has no record of receiving any such requests from
> [Plaintiff].

(ECF No. 20-5 ¶ 23; *see also* ECF No. 22 ¶ 23 ("Admitted to the extent that the referenced

documents speak for themselves.")).  Accordingly, the Court finds that no genuine issue of material

fact exists for trial.  As such, Defendant's motion for summary judgment as to count three of

Plaintiff's complaint will be granted, and Plaintiff's motion for summary judgment as to count

three of Plaintiff's complaint will be denied.

### C.     Count Four of Plaintiff's Complaint

Count Four of Plaintiff's complaint seeks relief under 29 C.F.R. 2560.503-1 for

Defendant's alleged failure to maintain and execute reasonable claims procedures.  (ECF No. 1 at

12-14).

> That regulation sets forth minimum disclosure requirements for an employee
> benefit plan under ERISA and requires, inter alia, that a plan administrator provide
> written notice of a benefit determination, the specific reasons for any adverse
> determination, and the time limits and appeal procedures for any adverse
> determinations "in a manner calculated to be understood by the claimant."

*Shah v. Aetna*, No. 17-195, 2017 WL 2918943, at *3 (D.N.J. July 6, 2017) (quoting 29 C.F.R.

2560.503-1(g)).  Plaintiff alleges in its complaint that "[i]n the case at bar, the employee benefit

plan from which Plaintiff claimed benefits did not establish and maintain, in its actual operation

of the Plan, procedures that ensured that all relevant time limits and appeal procedures were

communicated to the person claiming benefits."  (ECF No. 1 at 13).  Moreover, in Plaintiff's

13

motion for summary judgment, Plaintiff appears to aver that the explanations of benefits ("EOBs") and letter sent in response to the denial of Plaintiff's appeal do not comply with the aforementioned regulation. (ECF No. 19-2 at 8).

"The Third Circuit has observed that § 503 and its regulations 'set[] forth only the disclosure obligations of "the Plan" and . . . do[] not establish that those obligations are enforceable through the sanctions of ERISA's civil enforcement provision.'" *Shah*, 2017 WL 2918943, at *3 (quoting *Syed v. Hercules, Inc.*, 214 F.3d 155, 162 (3d Cir. 2000)). "[T]he remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Syed*, 214 F.3d at 162. "From this, courts in this District have found that § 1133 and 29 C.F.R. 2560.503-1 do not create a private cause of action and have dismissed claims identical to [Plaintiff's] as legally insufficient." *Shah*, 2017 WL 2918943, at *3.

Here, Plaintiff contends that as a result of Defendant's violations of 29 C.F.R. 2560.503-1, Plaintiff is entitled to compensatory damages and interest, as well as attorneys' fees and costs of suit. (ECF No. 1 at 14). Nonetheless, because "29 C.F.R. § 2560.503-1 does not give rise to a private right of action," Plaintiff's requested relief cannot be granted. *Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, No. 15-8590, 2016 WL 4499551, at *12 (D.N.J. Aug. 25, 2016).

Plaintiff also seeks "an Order that . . . Plaintiff is deemed to have exhausted all required administrative remedies[.]" (ECF No. 1 at 14). As a preliminary matter, the Court notes that Defendant "does not dispute that Plaintiff has exhausted [its] administrative remedies under the NNJ Plan by appealing to the Board of Trustees." (ECF No. 21 at 21; *see also* ECF No. 24 at 7). Accordingly, the Court need not issue an Order declaring such. Even if Defendant did dispute whether Plaintiff exhausted its administrative remedies, however, the Court would be unable to grant Plaintiff's requested relief. *See Shah*, 2017 WL 2918943, at *3 (finding that the Court could

14

not issue an order deeming plaintiff to have exhausted all required administrative remedies when the appropriate relief would be to remand to the plan administrator). As discussed above, the Court finds that Plaintiff cannot sustain a private cause of action under 29 C.F.R. § 2560.503-1. As Plaintiff does not seek remand of its case to the plan administrator, Defendant's motion for summary judgment as to count four of Plaintiff's complaint will be granted, and Plaintiff's motion for summary judgment as to count four of Plaintiff's complaint will be denied.

## V.     CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. An appropriate Order accompanies this Opinion.

Dated: June 18, 2018

**CLAIRE C. CECCHI, U.S.D.J.**

15